**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.R.**

**No. 20-0880** (McDowell County 18-JA-95)

**MEMORANDUM DECISION**

Petitioner Father L.R., by counsel Patricia Kinder Beavers, appeals the Circuit Court of McDowell County's September 24, 2020, order terminating his parental rights to C.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Andrew Waight, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating him, denying his motion for a post-dispositional improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against the mother after an interaction with a law enforcement officer led the DHHR to investigate her alleged drug abuse and untreated mental health issues. During a Child Protective Services ("CPS") interview, petitioner stated that he believed the mother abuses drugs, potentially methamphetamine, and was emotionally unstable. After an altercation with the DHHR and law enforcement at the mother's home, the child was removed and placed with petitioner who was deemed a nonabusing parent. In December of 2018, the mother underwent a psychological evaluation, and in January of 2019, she tested positive for methamphetamine.

The DHHR filed an amended petition in April of 2019, alleging that petitioner refused to allow the DHHR to check on C.R. and that the mother continued to live in the home with petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and C.R. The DHHR further alleged that petitioner perpetuated domestic violence against the mother in the presence of C.R. At a status hearing the same month, the circuit court ordered petitioner to have no contact with the mother and to move out of the home by April 25, 2019, with the assistance of the DHHR.[2] In September of 2019, the DHHR filed a second amended petition alleging that petitioner continued to perpetuate domestic abuse in the home in the presence of C.R. The same month, the circuit court entered an order removing C.R. from petitioner's care as he continued to live with the mother in violation of the court's previous order in April of 2019. In October of 2019, the parents each sent various self-represented letters to the circuit court.

The circuit court held adjudicatory hearings in October of 2019, during which it noted that both parents' various letters to the court were "devoid of logic and reason, and are nothing more than inarticulate and indecipherable ramblings." The circuit court explained that it would not consider the letters for purposes of adjudication but would consider them for purposes of disposition. The DHHR presented the testimony of Mr. David Lawson, M.A., the psychologist who performed a psychological evaluation upon the mother. In his opinion, the mother suffered from untreated mental illness with serious delusions, opioid use disorder, methamphetamine use disorder, post-traumatic stress disorder, and relationship distress with partner as she disclosed domestic violence by petitioner. He also testified that the mother described her relationship with petitioner as abusive and that she was afraid to be truthful about petitioner's conduct.

Next, a CPS worker testified that neighbors reported hearing yelling and screaming from the mother's home in April of 2019, and that the child was present during the domestic altercation between the parents. Most importantly, the worker testified that when she and law enforcement officers went to the home to remove C.R. from petitioner's care in September of 2019, he used his truck to block the driveway and refused to allow the worker to take the child. Law enforcement officers were forced to handcuff petitioner and move his truck to gain access to C.R. who was found in the yard with the mother.

The mother testified generally that she had been prescribed a number of medications over the years, but she ceased taking the medications, explaining that she no longer had any mental illness. She admitted to past drug use but denied drug use during the previous year. Petitioner did not testify. The DHHR also presented evidence that two separate family courts entered domestic violence protective orders against petitioner on behalf of an ex-wife and an ex-girlfriend. The circuit court took judicial notice of these findings and found that petitioner had a violent disposition and a history of domestic abuse with his partners. The circuit court found both parents in contempt of the court's previous no contact orders as they continued to live together. Ultimately, the circuit court adjudicated petitioner as an abusing parent based upon his failure to protect C.R. from the mother's unresolved mental health issues and drug abuse, knowingly allowing the mother to inflict mental and emotional injury on C.R., and perpetuating domestic violence and engaging in abusive conduct, which endangered C.R.'s welfare.

In July of 2020, petitioner filed a motion for a post-dispositional improvement period. Later that month, the circuit court held two final dispositional hearings. The DHHR submitted a case plan recommending the termination of petitioner's parental rights as he had failed to find

---

[2]The record indicates that the mother owned the home.

independent housing and stay away from the mother. A provider testified that when the parents came to their scheduled separate supervised visitations with C.R., they rode in the same vehicle together. A CPS worker testified that she attempted to help petitioner obtain housing by providing the first month's rent, but petitioner claimed he would purchase his own housing. She also stated that the parents arrived together for MDT meetings and hearings. Petitioner testified that he knew that the mother was not to be alone with the child, yet he left C.R. in the mother's care. He also testified that he had not moved out of the mother's home because he could not find a place to live. Petitioner stated that he would stay away from the mother despite their nine-year-long relationship and the fact that he had not moved out of her house. When asked about the mother's drug addiction and mental instability, petitioner stated that he could not tell a difference in her behavior with or without medication and that she was no longer addicted to drugs. He stated that he could not remember telling the CPS worker in September of 2018 that the mother was using drugs and was mentally unstable and denied telling CPS workers to not come to his house to check on C.R. Petitioner testified that he would participate in the DHHR's services.

Ultimately, the circuit court found that the parents "purposefully [stood] in defiance of the [c]ourt's authority and the family case plans." The court further noted that the parents' "lack of respect for lawful court orders designed to protect the [child] and facilitate the reunification process is inexcusable." The court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on September 24, 2020.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. Petitioner contends that the first petition had no allegations against him, and he was dismissed as a respondent at the mother's preliminary hearing in October of 2018. Petitioner

---

[3]The mother's parental rights were terminated below. The permanency plan for C.R. is adoption by her foster mother.

asserts that as of April 25, 2019, the circuit court did not believe the child was in danger while in his care.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

According to West Virginia Code §§ 49-1-201(1)(A) and (D), an "[a]bused child" means a child whose health or welfare is being harmed or threatened by "[a] parent . . . who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, West Virginia Code § 49-1-201(1)(D) also provides that an "[a]bused child" means a child whose health or welfare is being harmed or threatened by "[d]omestic violence."

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. At the initial filing of the petition, petitioner reported to the DHHR worker that he believed the mother was abusing drugs and specifically named methamphetamine as the possible drug. He further stated that the mother was emotionally unstable. Therefore, while C.R. was placed with him, petitioner knowingly allowed C.R. to be around the mother who he admitted was abusing methamphetamine and was unstable. By refusing to leave the relationship with the mother and the home, petitioner failed to protect the child from the mother's emotional and mental harm caused by her drug abuse and untreated mental illness. The circuit court twice ordered petitioner to have no contact with the mother, yet he defied both orders, resulting in C.R.'s removal from his custody. Furthermore, there was clear and convincing evidence of petitioner's domestic abuse of the mother. Petitioner argues that the DHHR "did not substantiate any type of domestic violence against [petitioner]" and had no concerns with C.R. being in his custody as of late April of 2019. However, this contention is belied by the fact that after the DHHR learned of petitioner's propensity to commit domestic violence, it filed not one but two amended petitions alleging that he perpetrated domestic violence against the mother in the presence of C.R. Additionally, Mr. Lawson testified that he diagnosed the mother with "relationship distress with partner" as she disclosed domestic abuse by petitioner. Also, a CPS worker testified that neighbors reported yelling and screaming during a domestic altercation in April of 2019, and that C.R. was in the home at that time. Due to petitioner's failure to leave his abusive relationship with the mother, C.R. was exposed to domestic violence and emotional trauma while in petitioner's care. Accordingly, we find no error in the circuit court's adjudicating petitioner as an abusing parent.

4

Next, petitioner argues that the circuit court erred in denying his motion for a post-dispositional improvement period because he met "the criteria for the granting of an improvement period." In support, petitioner asserts that he attended one of the parenting sessions along with the mother. He also notes that the circuit court found that it was not in the child's best interest to "completely break the bond that exist between [she] and [her] parents" when it granted post-termination visitation.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [he] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that he was likely to fully participate in an improvement period. Petitioner disregarded the court's orders as he repeatedly violated the no contact order with the mother and was eventually held in contempt. The circuit court gave petitioner ample opportunity to obtain independent housing prior to the adjudicatory hearing, yet he refused to do so. By the time of the dispositional hearing, petitioner had been given fifteen months to move out of the mother's home to obtain housing and still had not done so. Furthermore, petitioner failed to cooperate with the DHHR's efforts to check on C.R.'s welfare when she was placed with him as he would not allow the workers to see the child. He also obstructed C.R.'s removal as evidenced by his blocking the driveway to the home to prevent the DHHR and law enforcement from removing C.R. Additionally, the circuit court did not find petitioner's testimony that he would stay away from the mother credible. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Finally, the circuit court's consideration of the child's bond with petitioner bears no weight upon whether petitioner was likely to participate in the terms and conditions of an improvement period. In light of the overwhelming evidence that petitioner has continually ignored the circuit court's orders and attempted to thwart the DHHR's efforts to protect the child in this matter, it is clear that petitioner was unlikely to participate in the terms and conditions of a post-dispositional improvement period.

Next, petitioner argues that the circuit court erred in terminating his parental rights. Petitioner avers that the DHHR never offered financial assistance to help him obtain independent housing yet also argues that there was no evidence that he could not provide for the child's needs. Petitioner again argues that the DHHR "was unable to substantiate any domestic violence [allegations] against [him]." He avers that there were no allegations of domestic violence against C.R. and that the mother should not be believed because of her "suspect . . . mental health issues."

5

Regarding petitioner's first contention, the record shows that petitioner remained employed throughout the proceedings and there is no evidence that the lack of financial means was the cause of his inability to move out of the mother's home. In fact, the DHHR offered to pay the first month's rent at another home but petitioner claimed he wanted to purchase housing instead. Petitioner had more than fifteen months to obtain housing, yet refused to obtain the same. Also, as discussed above, the DHHR clearly substantiated the allegations of domestic violence in the home as petitioner was appropriately adjudicated in this regard. Further, as previously discussed, West Virginia Code § 49-1-201(1)(D) provides that an "[a]bused child" means a child whose health or welfare is being harmed or threatened by "[d]omestic violence," and therefore, C.R.'s exposure to domestic violence alone constituted abuse. Finally, petitioner cannot now claim that the mother has suspected mental health issues that affect her credibility when he testified at the dispositional hearing that she had no mental health problems and had no issues parenting C.R.

Petitioner also contends that the final dispositional order failed to make a required finding regarding whether the DHHR made reasonable efforts to preserve and reunify the family. We disagree and find that the circuit court's ninety-two-page final order thoroughly addressed the DHHR's efforts to preserve and reunify the family. Indeed, the circuit court found that the parents' "lack of respect for lawful court orders designed to protect the [child] and facilitate the reunification process is inexcusable," thus explaining that the parents thwarted the DHHR's efforts to preserve and reunify the family.

Therefore, we find no error in the circuit court's termination of petitioner's parental rights as the circuit court made the required findings pursuant to West Virginia Code § 49-4-604(c)(6), which provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. With these parameters in mind, it is clear that the record supports this finding, given petitioner's outright refusal to obey the court's various no contact orders, obstruction of the DHHR's efforts, and denial of the issues of abuse and neglect. As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton